# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SONNY R. MARSHALL, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-13-437-JHP-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Sonny Rae Marshall requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 8, 1980, and was thirty-one years old at the time of the administrative hearing (Tr. 42). Although somewhat unclear, the claimant's application stated that he had an eleventh grade education, and he has worked as a construction worker I, maintenance worker, and sacker (Tr. 25-26, 175). The claimant alleges inability to work since January 29, 2009, due to depression, anxiety, grief, and a hip and back injury from a previous motor vehicle accident (Tr. 174).

## Procedural History

The claimant applied for supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on November 22, 2010. His application was denied. Following an administrative hearing, ALJ David W. Engel found that the claimant was not disabled in a written opinion dated May 22, 2012 (Tr. 15-28). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform a full range of medium, light, and sedentary work, but that he was unable to climb ropes, ladders, and scaffolds; unable to work in environments where he would be exposed to unprotected heights and dangerous moving

machinery parts; but was able to understand, remember, and carry out simple to moderately detailed instructions in a work-related setting; and was able to interact with co-workers and supervisors under routine supervision (Tr. 20). The ALJ concluded that even though the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, bottling line attendant, housekeeper, touch up screener (inspector), lens inserter (assembly), and poultry cleaner (Tr. 27).

**Review**

The claimant contends that the ALJ erred: (i) by failing to determine his actual education level, and (ii) by failing to order a consultative examination regarding his IQ. Neither of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found the claimant had the severe impairments of panic disorder, depression characterized by bereavement issues, obesity, and a history of chronic back pain (Tr. 18). The claimant received regular treatment at Weleetka (Tr. 240-249, 272-274, 322-345), as well as the Muscogee Nation Division of Health (Tr. 346-355, 396-399).

Dr. Ronald Schatzman conducted a physical examination of the claimant on March 9, 2011, noting the claimant reported a ninth grade education (Tr. 251). Upon exam, Dr. Schatzman noted that the claimant was obese and had an abnormality with extraocular movement of his right eye, but had an otherwise normal exam. He assessed

the claimant with back pain by history, hypertension by history, excessive grief reaction with anxiety and depression, and obesity (Tr. 252-253). He recommended that the claimant have a mental examination.

As a result, Kathleen Ward, Ph.D., conducted a mental status examination of the claimant on March 28, 2011, noting a ninth grade education (Tr. 267). She found that his appearance and behavior were congruent to the topic, that his thought processes were logical and organized, that there was no evidence of delusional thought, that he reported a very depressed mood, and that he was oriented x3 (Tr. 268-269). As to his concentration and memory, she took him through several exercises in which he could not perform serial 7's, could spell "world" forwards and attempted to do so in reverse, could name the current President and the previous three with some challenge, and was not able to interpret proverbs (Tr. 269). She estimated that his IQ was above 70 (Tr. 269). She assessed him on Axis I with PTSD secondary to childhood abuse, panic disorder with agoraphobia, major depressive disorder moderate to severe, and bereavement (Tr. 269).

At the administrative hearing, the claimant testified as to his age, work history and impairments. As relevant to this appeal, the ALJ asked the claimant if he completed the tenth or the eleventh grade, and the claimant responded that it was the ninth grade (Tr. 43). The ALJ stated, "Everybody else says 11 so – I don't, okay. You say nine. Okay." The claimant then responded, "That's the last one that I can remember" (Tr. 43). The ALJ then asked if he later got his high school diploma or GED, and he responded that he did not (Tr. 43-44). As to his mental impairments, the claimant testified that he lost his

son in February 2009 and "can't function," and that he does not like to go out in public (Tr. 45-46, 58-60). He stated that he struggles to leave the house every day (Tr. 61-62). The ALJ then asked a series of questions of the vocational expert (VE) at the hearing. In a hypothetical, the ALJ asked the VE to "assume a 10th grade education . . . limited to light work or sedentary work[,]" but with "no climbing or ropes, ladders, scaffolds, unprotected heights, and dangerous machinery[,]" and "limited to simple instructions in terms of understanding, remembering, and carrying out those kinds of instructions[,]" and where "interaction with the general public will be limited to an occasional basis only[,]" with "routine supervision" (Tr. 72-73). The VE responded that that the claimant could not perform his past work, but that he could perform the light jobs of bottling line attendant, housekeeper, and poultry cleaner, and the sedentary jobs of touch-up screener and lens inserter (Tr. 74-75).

In his written opinion, the ALJ summarized the claimant's testimony, as well as the medical evidence. At step four, in reciting the claimant's RFC, he stated: "[Claimant] . . . with a high school education (1997) . . ." (Tr. 20). Later in step four, he recited the claimant's own testimony that he had a ninth grade education (Tr. 21). He then summarized the findings of both Dr. Schatzman and Dr. Ward, as well as the available treatment records (Tr. 22-25). He acknowledged that Dr. Ward's findings included some minor deficits in social judgment and problem solving, but concluded that the claimant could nevertheless function within the assigned RFC without experiencing significant exacerbation of his symptoms (Tr. 25). After determining that the claimant

could not perform his past relevant work, the ALJ stated that the claimant had a "limited education" (Tr. 26).

The claimant first contends that the ALJ erred by failing to assign the proper education level when he assessed the claimant. It is true that there is some confusion in the record as to the claimant's education level because his disability application indicated that he completed the eleventh grade in 1997 (Tr. 175), he testified at the hearing and told both Dr. Schatzman and Dr. Ward that he had a ninth grade education (Tr. 43,251, 267), and the ALJ inexplicably seemed to split the difference when he proffered a hypothetical to the VE describing the claimant as having a tenth grade education (Tr. 72). "[T]he numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities." 20 C.F.R. § 416.964(b). Here, there certainly is contradictory evidence that the claimant had either a ninth or an eleventh grade education. However, education from the seventh grade through the eleventh grade is classified as a "limited education." 20 C.F.R. § 416.964(b)(3). The claimant asserts that there is no way to know how much the ALJ's error regarding the claimant's education influenced the opinion of the VE, particularly in light of the RFC assessment in which he described the claimant as having a high school education, and thus reversal is required. The undersigned Magistrate Judge disagrees. It does appear that the statement describing the claimant as having a high school education was in error, in light of the fact that the ALJ

recited the claimant's testimony regarding his education level and later classified the claimant's education as limited (Tr. 21, 26). Nevertheless, such error is harmless where, as here, the ALJ's questions to the VE were based on a hypothetical education level consistent with a limited education, and the ALJ himself specifically noted (repeatedly) at other points in his opinion that the claimant reported a ninth grade education and/or had a limited education. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (applying the "rubric of harmless error" is allowed where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."). As a result, the jobs the ALJ found that the claimant could perform at step five were not based on an erroneous high school education, but on a "limited education," which would classify the claimant's education whether he had a ninth or eleventh grade education.

The claimant next contends that the ALJ erred by failing to order an IQ exam. The ALJ has "broad latitude" in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). "When the claimant has satisfied his or her burden" of presenting evidence suggestive of a severe impairment, "then, and only then, [it] becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167. "Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial[.] Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest

a reasonable possibility that a severe impairment exists." *Id.* [citation omitted]. Dr. Schatzman recommended a mental status examination, which *was conducted* by Dr. Ward. At the administrative hearing, the ALJ twice asked the claimant's representative if there was any follow-up or more evidence (Tr. 39-40, 77), but he did not request that the ALJ order a specific IQ examination and there is nothing in the record that clearly establishes the need for such a consultation. *Hawkins*, 113 F.3d at 1168 (noting that without a request by counsel, a duty will not be imposed on the ALJ to order an examination unless the need is clearly established in the record). The undersigned Magistrate Judge therefore finds no error on the ALJ's part.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**